GEORGE L. SEAGER, Appellee, v. HERBERT E. FOSTER, Appellant.

**ABATEMENT AND REVIVAL:** Nature. of Action. Each of two
1 parties, as hostile principals in an accidental collision, may
maintain a separate action against the other for his damages,
and the action first brought is not pleadable in abatement of the
action last brought.

**MUNICIPAL CORPORATIONS:** Right of Way at Intersections. A
2 city may validly determine by ordinance which of two vehicles, traveling on different intersecting streets without change
of direction, shall have the right of way in, crossing such intersection. (Sec. 755, Code, 1897.)

**EVIDENCE:** Whether Object Moved Slowly or Rapidly. A witness
3 may not, in the absence of some basis for intelligent comparison,
competently give his opinion as to whether an object was moving
*slowly* or *rapidly*, nor may he, when the basis for comparison
appears, make the comparison for the jury.

**HIGHWAYS:** Negligence by Not Yielding Right of Way. The
4 driver of a vehicle who fails to yield the right of way to another vehicle at an intersecting crossing, when he has ample
time, and. is under legal obligation to so do, is guilty of negligence.

*Appeal from Cedar Rapids Superior Court.*—C. B. ROBBINS,
Judge.

DECEMBER 14, 1918.

.ACTION for damages consequent on an automobile collision resulted in judgment against defendant as prayed.
The defendant appeals.—*Affirmed.*

*Treichler & Treichler,* for appellant.

*Barnes, Chamberlain & Hanzlik,* for appellee.

LADD, J.—The plaintiff drove his automobile, weighing
about 800 pounds, along Bever Avenue in an easterly direction, as the defendant, with his car, weighing about 3,395

pounds, came northerly up Fourteenth Street, which inter-
sects Bever Avenue. The plaintiff, as he approached the
intersection, looked to the north, and thereafter to the
south, and testified that he did not observe defendant's car
until about 16 feet west of the west curbing of Fourteenth
Street, and when defendant was about the same distance
south of the intersection. He estimated his speed at about
12 miles an hour, and was unable to say whether he looked
toward the south previous to observing the approach of de-
fendant's car. Zook, who was riding with plaintiff, esti-
mated the speed of the car at 15 miles per hour, and swore
that it was about half way between Third Avenue and Four-
teenth Street, or about 60 feet west of the intersection; and
that defendant's car was then about 40 feet south therefrom;
and that he called plaintiff's attention to the approach of de-
fendant's car. On the other hand, defendant testified to
having been about 50 feet south of the intersection when
he looked as far west as the intersection of Bever Avenue
and Third Avenue, but said that he did not see the car until
after looking to the east, and when it was about 70 feet west
of the intersection, and when he was about 40 feet south of
it. Defendant's son, who sat in the back seat, testified that
he saw the plaintiff's car at the intersection of the avenue,
or about 117 feet west of the intersection, and that he im-
mediately told his father. Defendant estimated the speed
of his car at 12 miles per hour, and that of plaintiff at 25
miles per hour; while his son thought plaintiff's car was
moving at the rate of 14 or 15 miles per hour. The automo-
biles collided in the intersection, but somewhat south of the
street railway track, and both cars were injured. Plaintiff
claimed in his petition the expense of repairing his car,
as damages; and the defendant, putting in issue such claim,
demanded judgment for the damages done his vehicle, and
also pleaded, by way of abatement, another action pend-
ing.

I.    This action was begun. in the superior court of Cedar Rapids, December 21, 1916.    Prior thereto, on November 17, 1916, defendant began suit as plaintiff, to recover in that action the damages claimed in his cross-petition, and issue was joined thereon by plaintiff in this action, as defendant in that. The defendant in the action at bar pleaded the pendency of the suit begun November 17, 1916, in abatement, and the plea was denied.    The plaintiff in this action had not, as defendant in the prior suit, asserted any claim to damages consequent on the collision, either by way of counterclaim, set-off, or cross-petition, and was not required so to do, in order to protect such claim.    He might so have done, but was not bound to; for he might have elected whether he would assert his claim for damages in that action, or proceed in an independent action to recover the damages, if any he had suffered.    *Jones v. Witousek & Co.,* 114 Iowa 14; *Smeaton v. Cole,* 120 Iowa 368.    Having elected to prosecute his claim for damages in another and independent action, as was his right, it might not be abated because of the pendency of defendant's suit, previously brought.    *Osborn v. Cloud,* 23 Iowa 104; Section 3440, Code; 1 Corpus Juris 83.

1. ABATEMENT AND REVIVAL: nature of action.

II.    An ordinance of the city of Cedar Rapids, Section 393, was received in evidence, over objection that it was void because of being covered by Paragraphs 11 and 12 of Section 1571-m18 of the Code Supplement, 1913.    The ordinance declares that:

"Except as otherwise provided, vehicles traveling on thoroughfares running at right angles to the Cedar River, which are designated and known as 'avenues,' have the right of way over vehicles traveling on thoroughfares known as 'streets' or other thoroughfares which intersect 'avenues.' "

2. MUNICIPAL CORPORATIONS: right of way at intersections.

The court instructed the jury:

"You are instructed that such ordinance means that, where drivers of vehicles, one being on an avenue and one on a street, approach an intersection where they must pass each other, wherever it intersects at the same moment, it is the duty of the person driving the vehicle upon the street to permit the vehicle driven on the avenue to pass in front of the vehicle on the street."

The contention is that this is invalid, for that the subject is covered by Paragraphs 11 and 12 of said Section 1571-m18 of the Code Supplement, which reads:

"11.   In cities and towns, motor vehicles turning to the right from one street into another shall have the right of way over vehicles traveling on the street into which same are turning.

"12.   In cities and towns, motor vehicles turning to the left into another street shall give the right of way to vehicles traveling on the street into which same are turning."

It will be observed that these paragraphs do not cover the situation where the automobiles approach on different streets intersecting, as at right angles, without turning, but continuing in their course; and the question presented is whether, this not having been touched by the paragraphs quoted, it was competent for the city council of Cedar Rapids to enact the ordinance with respect thereto.

Code Section 755 conferred upon the city the power to regulate the driving of vehicles within the limits of the corporation; and surely, rules defining which shall have the right of way in a situation like that involved in this case are within the terms of this statute, for it concerns the safety of drivers in passing on the intersection of the streets. Nothing to be found in Section 1571-m20 of the Code Supplement, 1913, obviates this conclusion.   The fore part of that section forbids the exaction of any fee, license, or permit for the use of public highways, or exclusion from the

free use thereof by local authorities, with certain exceptions, and declares that:

"No ordinance, rule or regulation contrary or in any wise inconsistent with the provisions of this act, now in force or hereinafter enacted, shall have any effect."

As seen, this ordinance is not in conflict with any provision in the act known as Chapter 2-B of Title VIII. Therein appears no purpose on the part of the general assembly to withdraw the power to regulate the driving of automobiles, as conferred by Section 755 of the Code, save as therein specified. We are of opinion that the enactment of the ordinance is within the authority of the city council of Cedar Rapids; and the instruction referred to, in so saying to the jury, has our approval.

III.   Plaintiff, having testified that he could not judge the rate of speed at which defendant's car was moving, was asked: "In your opinion, was it going fast or slow?" Objection as "relative in form, and there is nothing to compare it with," was overruled, and the witness answered: "He was coming pretty fast." The ruling was erroneous; for there is no criterion that we know of by which to determine whether an automobile is moving fast or slowly. Fifteen or twenty miles per hour seems quite fast to some folks. while others would deem a forty or fifty-mile rate scarcely to be denominated as fast driving. Plaintiff's ideas on this subject do not appear; and the jury derived no information from the answer given, and could not have based a finding as to any definite speed upon the answer given. By these reasons, we are persuaded that the ruling, though erroneous, was without prejudice.

3. EVIDENCE: whether object moved slowly or rapidly.

IV.   Defendant's son swore that, in his judgment, the automobile in which he was riding was moving at a speed of 14 or 15 miles per hour,—not over 15.

"Q. Was it [the Ford] going faster than the car that you were in?"

An objection, as incompetent, irrelevant, and immaterial, as asking for a comparison, was sustained, and the witness was asked: "Was it going fast or slow?" and a like objection was sustained. Possibly a difference in the objection interposed to the last question and the one to that propounded to plaintiff may explain the difference in the ruling. At any rate, the court, as seen, was correct this time. The ruling on the first above question, however, is the one complained of. The question called for a conclusion, arrived at by comparing the speed of one car with that of the other; and for this reason, the objection should have been sustained, as the speed of the car should have been shown, and the jury allowed to make the comparison.

V. The evidence was sufficient to carry to the jury the issue as to whether the defendant was negligent in not yielding the right of way to plaintiff. He observed the plaintiff's automobile approaching, in ample

4. HIGHWAYS:
negligence by
not yielding
right of way.

time to enable him to have exercised ordinary care, in yielding the right of way, to have avoided the collision. As to whether plaintiff was guilty of contributory negligence, the evidence is closed; but we think that, in view of the fact that he was entitled to the right of way, the jury might have found him without fault contributing to the injury. The judgment is—*Affirmed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.